IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON DUNCAN, | ) | |
| | ) | Civil Action No. 2: 15cv1347 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | United States District Court |
| | ) | Nora Barry Fischer |
| SERGEANT BLACK, C.O. CERCONE, | ) | |
| and SUPERINTENDENT COLEMAN, | ) | |
| | ) | United States Magistrate Judge |
| Defendants. | ) | Cynthia Reed Eddy |

**MEMORANDUM OPINION AND ORDER**

Presently pending before the court is Plaintiff's Motion to Compel Discovery and Brief in Support Thereof. (ECF Nos. 129, 130). Defendants Cercone and Coleman have responded (ECF No. 133) and the motion is ripe for decision. For the reasons stated below, Plaintiff's motion is GRANTED.

I. **Factual and Procedural Background**

Plaintiff Brandon Duncan ("Plaintiff" or "Duncan") is a state prisoner in the custody of the Pennsylvania Department of Corrections and is currently incarcerated at the State Correctional Institution at Greene ("SCI-Greene"). He filed this *pro se* civil rights action under 42 U.S.C. § 1983 and alleges that while he was incarcerated at SCI-Fayette, defendants Sergeant Black, C.O Cercone, and Superintendent Coleman violated his federal constitutional rights under the Eighth Amendment to the United States Constitution when they failed to protect him from a violent assault by another inmate. Plaintiff also brings a state law claim of intentional infliction of emotional distress against Defendant Black.

Plaintiff alleges that on October 20, 2013, he was injured when another inmate, Alexander Fulton, struck him in the head with a combination lock that was concealed in a brown

1

knit hat. As a result of his injuries, Duncan received six staples in his head.

Duncan also alleges that immediately prior to the attack, Fulton went to the control bubble where Sgt. Black was working and spoke with Sgt. Black. After their conversation, Sgt. Black opened Fulton's cell door so that he could go into his cell and opened an unoccupied cell which, according to the Amended Complaint, should have remained locked. Fulton entered the unoccupied cell and motioned for Duncan to join him. When Duncan entered the cell, Fulton began to attack him. C.O. Cercone was the assigned pod officer at the time of the attack, but was not present on the pod at the time of the attack.

Duncan alleges that Superintendent Coleman allowed a pattern or practice of understaffing the control bubble and failed to enforce DOC policies regarding appropriate staffing and that the Superintendent "allowed a pattern or practice of a 'fight club' in which correction officers could place bets on bouts between inmates and in one instance a guard against an inmate." With regard to Defendant Cercone, the Amended Complaint states that C.O. Cercone routinely would leave the pod, knowingly creating a risk to inmates because when he was absent there was no correction officer present on the pod. As to Defendant Black, the Amended Complaint states that Defendant Black "would routinely encourage and enable inmate on inmate assaults." The Amended Complaint further states that "Defendant Black admitted to Captain Workman that (Defendant Black) opened a cell door and allowed the inmates to 'settle their differences'." Amended Complaint, ¶ 72 (quoting from Superior Court Opinion).

The DOC Office of Special Investigations and Intelligence (OSII) conducted an internal investigation of the incident and apparently based on its findings, Defendant Black was criminally charged with recklessly endangering another person. Defendant Black was admitted to the Accelerated Rehabilitated Disposition Program for a period of six (6) months and ordered to

complete fifty (50) hours of community service and pay a number of fines.

On February 8, 2017, the court denied all Defendants Motions to Dismiss the Amended Complaint and discovery commenced shortly thereafter. On December 21, 2017, Plaintiff filed a Motion to Compel Discovery Relating to Settlement Agreements and underlying Litigation and Defendants have responded. (ECF Nos. 129, 130, 133).

## II. Legal Principles

Several basic guiding principles inform the resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery. The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs it likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1)

Issues relating to the scope of discovery permitted under Rule 26 rest in the sound discretion of the court. *Wisniewsky v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). In considering whether evidence is relevant, the court considers whether the evidence has "a tendency to make a fact more or less probably than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele-Radio Sys. Ltd. V. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981).

3

Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir.1983). "Under that standard, a magistrate judge's discovery ruling is entitled to great deference and is reversible only for abuse of discretion." *Sherwood v. Beard, et al.*, 2013 WL 2457282 (W.D. Pa. June 6, 2013) (collecting cases).

When presented with requests for the disclosure of documents relating to the settlement of claims certain additional principles guide the exercise of the court's discretion. There is an inherent tension between Fed.R.Evid. 408, which prohibits the use of settlement discussions to prove liability, and Rule 26, which permits liberal discovery. The mere fact that settling parties have agreed to maintain the confidentiality of their agreement does not automatically serve to shield the agreement from discovery. We note that several courts have addressed the question of whether a non-settling party should have access to a settlement agreement that is confidential by agreement of the signatories, as is the case here. "None of these courts have blithely permitted discovery, but rather require some heightened showing of relevance or need." *In re Flat Glass Antitrust Litigation*, 2013 WL 1703864 * 1 (W.D. Pa. Apr. 19, 2013) (internal citations omitted).

> Because public policy favors the settlement of disputes, courts have imposed on the party seeking discovery of a confidential settlement agreement the burden to make a particularized showing that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence.

*Id*.

Thus, while the "Third Circuit does not recognize a settlement privilege, ... Parties seeking to discover such [settlement] communications must make a heightened, more

particularized showing of relevance." *Rhines v. United States,* 2014 WL 3829002 *3 (M.D. Pa. Aug. 4, 2014). *See also Chappelle v. Varano*, 2012 WL 3241503 (M.D. Pa. Aug. 7, 2012).

**III. Discussion**

As noted above, the claims in this case are that while Plaintiff was incarcerated at SCI-Fayette, defendants Sergeant Black, C.O Cercone, and Superintendent Coleman violated his federal constitutional rights under the Eighth Amendment to the United States Constitution when they failed to protect him from a violent assault by another inmate. Plaintiff also brings a state law claim of intentional infliction of emotional distress against Defendant Black. Plaintiff further alleges that Defendant Coleman had a pattern or practice of understaffing the control bubble and a pattern or practice of a facilitating a 'fight club' in which correction officers could place bets on bouts between inmates and in one instance a guard against inmate. He furthered alleged that Defendant Cercone would leave the pod unpatrolled, and that Defendant Black would routinely encourage and enable inmate on inmate assaults and would routinely orchestrate such assaults. (Amended Complaint, pars. 28, 32, 33, 41-46, 88).

Plaintiff's Motion to Compel seeks discovery regarding settlement agreements and related litigation involving prisoner physical altercations at SCI Fayette, which Defendants refused to provide on advice of counsel during Defendant Coleman's 30(b)(6) deposition.

Plaintiff argues that the information he seeks is relevant to his allegation of a policy and/or practice at SCI Fayette that leads to inmate violence and reasons that the agreements may lead to discovery of comparable incidents "to properly analyze the inmate endangerment and resulting violence in the matter at hand." (ECF No. 130, p. 3). Since Plaintiff has alleged a policy or practice in SCI Fayette that leads to endangering inmates, comparable incidents, as may be evinced by the settlement agreements and related litigation are relevant to establishing the

alleged policy or practice and the level of inmate endangerment. He further argues that the requested information was within the scope of the 30(b)(6) notice which included altercations between inmates as a matter for examination.

Defendants counter that lawsuits and settlement agreements would deal with difference plaintiffs, different defendants, different circumstances, and difference timeframes and that Plaintiff has not met the heightened burden required to obtain access to them. They also argue that the request is beyond the scope of the 30(b)(6) deposition notice.

Initially, the court finds that the requested information is fairly within the scope of the 30(b)(6) deposition notice. Further, Plaintiff has demonstrated a more particularized relevancy of the requested information. Although, not addressed by the parties, the court will limit the discovery to the relevant time period as defined by the parties as January 1, 2011 to December 31, 2013.

### III. CONCLUSION

For the reasons stated above,

IT IS HEREBY **ORDERED** that Plaintiff's Motion to Compel is **GRANTED**;

IT IS FURTHER **ORDERED** that Defendants must provide the compelled discovery on or before 9:00 AM on January 16, 2018.

SO **ORDERED** this 8th day of January, 2018.

s/ Cynthia Reed Eddy  
Cynthia Reed Eddy  
United States Magistrate Judge